## Case No. 921.

### BANK OF THE UNITED STATES v. LEE.

[3 Cranch, C. C. 288.] [1]

Circuit Court, District of Columbia. April Term, 1828.

NEGOTIABLE INSTRUMENTS—DISCHARGE OF INDORSER—EXTENSION OF TIME.

The indorser of a promissory note is discharged from his liability by the holder taking new

security, and giving time to the maker without the consent of the indorser.

[See White v. Burns, Case No. 17,539; Cope v. Huntt, Id. 3,206; Varnum v. Milford, Id. 16,890; Morgan v. Tipton, Id. 9,809.]

The defendant [E. J. Lee] was the indorser of R. B. Lee's note discounted by the plaintiffs.

THE COURT, (nem. con.) on the motion of Mr. Taylor, the defendant's counsel, instructed the jury, in effect, that if they should find from the evidence that the plaintiffs, in consideration of new security given by the maker of the note, agreed with him, without the defendant's consent, to extend the time of payment of the debt for one year or more, the defendant was thereby discharged from his liability as indorser of the note.

Mr. Taylor cited the following authorities: 7 Bac. Abr. 507; Nisbit v. Smith, 2 Brown. Ch. 579; Baird v. Rice, 1 Call, 18; Rees v. Berrington, 2 Ves. Jr. 540; Ward v. Johnson, 6 Munf. 6; Ellis v. Galindo, 1 Doug. 250, note; Hill v. Bull, Gilmer, 149; English v. Darley, 2 Bos. & P. 61; People v. Jansen, 7 Johns. 332; Bull, N. P. 275; Wilson v. Lenox, 1 Cranch, [5 U. S.] 194; James v. Badger, 1 Johns. Cas. 131; Croughton v. Duval, 3 Call, 69; Chitty, Bills, (Amer. Ed. 1817,) 300; Duval v. Trask, 12 Mass. 154; U. S. v. Nicholl, 12 Wheat. [25 U. S.] 510; McLemore v. Powell, Id. 554, 557; Moore v. Bowmaker, 6 Taunt. 379.

Mr. Lear, for plaintiffs.

---

## Case No. 922.

### BANK OF THE UNITED STATES v. LEE et al.

[5 Cranch, C. C. 319.] [1]

Circuit Court, District of Columbia. Nov. Term, 1837. [2]

DEED OF TRUST TO WIFE'S SEPARATE USE — CONSIDERATION—AGREEMENT TO RELINQUISH DOWER—RECORDING.

1. An agreement by a feme covert to relinquish her dower in certain lands, and to mortgage to her husband's creditors other lands held in trust to her separate use, is a sufficient consideration to prevent a post-nuptial deed of trust to her separate use from being a voluntary conveyance; and the subsequent actual release of dower, &c., made it an adequate consideration. The real consideration of a deed is always examinable, and the parties are not estopped to show what was the true consideration.

[See note at end of case.]

2. The notice which will affect the validity of a first incumbrance must be notice at the time the money is advanced or paid by the second incumbrancer. It is not necessary that the first grantees should give notice of their claim of title to a second incumbrancer, if they did not know of the second incumbrance at the time of its execution, or before the money was advanced. Their silence afterwards, cannot justify a charge of fraud or collusion.

3. The joint possession, of husband and wife, of property conveyed to her separate use, is no evidence of fraud.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Affirmed in 13 Pet. (38 U. S.) 107.]

4. A deed of conveyance of slaves in Virginia, for the separate use of the wife, loses nothing of its validity by the removal of the parties to the county of Washington, in the District of Columbia; and it is not necessary that it should be there recorded.

[See note at end of case.]

5. A power, reserved in a deed of trust, to dispose of any part of the property, with the consent of the trustee, and upon substituting an equivalent, is not evidence of fraud.

6. An executed consideration is a sufficient consideration for a grant—which is a contract executed—however it may be in regard to executory contracts. All our conveyances purport to be for a past consideration.

7. The subsequent conduct of the husband in disposing of some of the slaves without the consent of the trustees, and without substituting an equivalent, is not evidence that the deed was fraudulently made.

In equity. The bill in this case was filed by the Bank of the United States against Elizabeth Lee, widow of R. B. Lee, deceased, Edmund J. Lee, surviving trustee under a deed of trust for the separate use of Mrs. Lee, and Richard Smith, a trustee under a deed from R. B. Lee, to secure his debt to the Bank of the United States. The object of the bill is to set aside the deed of trust for the separate use of Mrs. Lee as being either a voluntary or a fraudulent deed, as to the plaintiffs, who are creditors of R. B. Lee, and to compel Mrs. Lee to surrender the property to Mr. Smith, so that it may be applied to the payment of the debt due to the plaintiffs. [Bill dismissed. This was afterwards affirmed by the supreme court in Bank of U. S. v. Lee, 13 Pet. (38 U. S.) 107. See note at end of case.]

The bill states that R. B. Lee represented himself, in 1817, to be the sole and lawful owner of the property, after mentioned, which was in his possession, as owner. That the bank lent him $6,000, upon the security of the property, and he gave his note, indorsed by E. J. Lee and W. Jones, and on the 11th of June, 1817, executed a deed of trust to Richard Smith, of twelve negroes, valued at $5,000, and all his household furniture, valued at $2,200, and a claim upon one John Hopkins. That the debt remains unpaid. That R. B. Lee died in 1827, intestate, insolvent, and no administration has been taken out upon his estate. That his widow, the defendant, Elizabeth Lee, has taken possession of all the property conveyed to Mr. Smith by the deed of trust, and refuses to deliver it up to him for the purposes of the trust. That by taking possession of the property she has made herself liable, as executrix in her own wrong. That she claims the property under a pretended deed of trust executed by her husband in January, 1809, which she has exhibited to the plaintiffs. That if any such deed was executed, it was a voluntary and fraudulent deed, and therefore void as against the plaintiffs, and as against W. Jones, the indorser of the note. That the considerations expressed in the deed are false, or, if true, insufficient to give it validity. That at the date of the deed, R. B. Lee was largely indebted, and incompetent, in law, to make the same. That if the deed was made, and upon legal and adequate consideration, it was executed in Virginia; that the trustees never had possession of the property, but suffered the said R. B. Lee to retain possession of the same, and to use, enjoy, and dispose of the same for his own use and benefit, as if he were the unqualified owner thereof. That it was never recorded in the county of Washington, nor any notice of it given to the public, or to the plaintiffs, in the lifetime of the said R. B. Lee, nor for many years subsequent to his death; but he was permitted to obtain credit upon it, and to sell and dispose of parts thereof. That the defendants, Mrs. Lee, and Mr. E. J. Lee, the only surviving trustee, knew that the plaintiffs had lent the $6,000 to the said R. B. Lee, in full faith that he was the real and unqualified owner of the property, and knew that he executed the deed to Mr. Smith, to secure the payment thereof, and never communicated to the plaintiffs, or to Mr. Smith, during the life of the said R. B. Lee, nor until several years after his death, the existence of the deed of the 9th of January, 1809, or any other claim inconsistent with the deed to Mr. Smith. All which actings and doings of the said Elizabeth and Edmund, and their omissions and negligences, as aforesaid, are, as to the plaintiffs, in contemplation of law, fraudulent, and preclude them, the said Elizabeth and Edmund, in law and equity, from asserting any right to any part of the said property against the plaintiffs. That the said deed of the 9th of January, 1809, for the reasons aforesaid, is fraudulent and void; and if it ever had any legal validity, it ought now, by a decree of this court, to be annulled. The bill then prays for a discovery, &c.; and that the deed may be produced and proved, and be decreed fraudulent and void, as against the plaintiffs; and that Mrs. Lee may be decreed to surrender the property to the plaintiffs, and to Mr. Smith, and to account for all that may be deficient, or disposed of; and that she may be personally responsible as executor in her own wrong, for the whole amount of debt, interest, and costs; and that Mr. Smith may be ordered to take possession of the property, and sell the same according to the deed of trust, &c.

Mrs. Lee, in her answer, admits the loan, but not the representations, &c., of Mr. R. B. Lee; admits the deed to Mr. Smith, of the 11th of June, 1817, but avers that she was ignorant of its execution until long after it had been delivered, and never consented thereto, and never waived her right to the property. Admits the judgments against R. B. Lee and W. Jones, and that they are unsatisfied. That R. B. Lee died in 1827, insolvent, intestate, and that no administra-

tion had been taken on his estate. She avers that on the 9th of January, 1809, she and her husband then dwelling, and having for a long time before dwelt in the county of Fairfax in Virginia, and the slaves and other property thereinafter mentioned, being in the said county, she agreed with her husband to relinquish her right of dower in certain Spotsylvania lands in which her husband held five eighths of eight thousand acres, and also to convey her right in certain Fairfax lands, containing twenty-one hundred acres, including the estate upon which they then resided, (and which were then held by certain trustees for her use,) to certain trustees to secure a debt of $1,034.-28 due by her husband to Judge Washington; in consideration of which, and of her execution of the conveyances, and relinquishment of dower, her husband agreed to convey to Edmund J. Lee, William Maffit, and Richard Colman, all the household and kitchen furniture, &c., then in their dwelling-house and kitchen, estimated to be worth $1,600, and thirty slaves, named in the answer, in trust for her use during her life, and to her heirs, &c. And that it was further agreed between them, that her husband should be authorized to dispose of, or sell any part of the said furniture, or slaves, with the consent of a majority of the trustees, &c., provided he should convey to them other property real or personal to the full value of the furniture or slaves which he should so dispose of or sell. And that if he should pay the debt to Judge Washington, without selling any part of the lands thus conveyed in trust to secure it, the conveyance to E. J. Lee and others should be void as to seven of the slaves, particularly named in the answer. And she avers that in pursuance of that agreement, and in consideration of the deed of the furniture and slaves to be made to the said E. J. Lee and others, in trust for her use, she joined her husband in the deed for the Spotsylvania lands on the 16th of July, 1809, relinquishing her dower therein; and on the 9th of January, 1809, executed the deed of trust of the Fairfax lands to secure the debt to Judge Washington; and that on the same day her husband executed the deed of trust of the furniture and slaves to E. J. Lee and others; which deed was fully proved and recorded, within eight months from its date, in Fairfax county court, in which county they still continued to reside, and in which the furniture and slaves still remained; which deeds are exhibited and marked No. 1, 2, & 3. That the agreement was bona fide and without fraud; and that she is a bona fide purchaser of the furniture and slaves according to the terms of the said deed. She admits that there was no sale of the Fairfax land, and therefore she does not claim the seven slaves, and that they are not in her possession nor subject to her control. She admits that her husband sold George, and substituted Peter; and

she emancipated Peter before the institution of any proceeding of the plaintiffs against her for the slaves. That her husband sold Henry, Milly, Letty, and her two sons, and substituted nothing in their place, except some articles of furniture for Letty and her two children who were sold with the consent of the trustees. That John, Kitty, Frank, Harriet, and Caroline are in her possession. That a great portion of the household and kitchen furniture, &c., has been destroyed in the using, during the period of twenty-six years, and she annexes a schedule of what remains. That the seven slaves were not included in the deed of her husband to Mr. Smith. She denies her liability to account to the plaintiffs for the property conveyed in trust for her use. She admits that her husband was considerably indebted when he made the deed of trust for her use; but denies that it was, in law, a voluntary conveyance; and avers that it was made to procure for her husband the means of discharging a portion of those debts.

She denies that she concealed her title and claims to the furniture and slaves, or by any culpable silence induced or suffered the plaintiffs, or any persons to purchase or receive a conveyance of the same from her husband. She states that her husband died in 1827; that they lived together until his death. That her possession could not be separated from that of her husband, and was consistent with the deed. She admits that he sold some of the slaves, under the pressure of great necessity, without her consent or that of her trustees. She avers that at the time the plaintiffs lent the money to her husband she was not informed that it was intended to be secured, or was secured by the deed to Mr. Smith. That she was not informed that such security had been given, until a long time afterwards; but she cannot recollect the time at which such information was first received. That in addition to the said deed to Mr. Smith, further security was given by a deed from Overton Carr and her husband to Mr. Smith for certain lots in the city of Washington, and by the assignment of the debt due by John Hopkins, and by the conveyance of a tract of land called Langley. That the money lent by the plaintiffs to her husband, or some part of it, was applied by him to the purchase and improvement of the lots conveyed by him and Overton Carr to Mr. Smith. That she has no knowledge that at the time the securities were given any information was given to the plaintiffs, or to Mr. Smith, that her husband had executed any prior deed of any part of the property mentioned in the said deeds. That her husband had remained considerably indebted at the time of his death, but she does not know the names of his creditors, nor the amount of his debts. That she asserted her right to the slaves thus conveyed by her husband to Mr. Smith

as soon as she was informed of the attempt of the plaintiffs to obtain possession thereof under the deed to the said R. Smith. She admits that the debt to Judge Washington has been paid, but she knows not out of what funds.

Mr. E. J. Lee, in his answer, states, that he and the other trustees never had possession of the property; but several times interfered to protect it from the creditors of Mr. R. B. Lee. That he never gave the plaintiffs notice of the deed of trust to him and the other trustees. That he did not know of R. B. Lee's deed to Mr. Smith until shortly before R. B. Lee's death. That he is advised that the deed of trust of 1825, from R. B. Lee and wife, to R. Smith, for further securing the debt, is an abandonment of all lien which the plaintiffs ever had by virtue of the deed to R. Smith, of 1817.

Mr. Richard Smith, in his answer, states that the property conveyed to him by R. B. Lee and Overton Carr, has been sold to the best advantage, and the proceeds have been applied towards the extinguishment of the debt; but that nothing has been obtained from the claim upon Mr. Hopkins, nor from the land called Langley, Mrs. Lee having claimed the same, and obtained an injunction, which is still pending in Virginia. That he had no notice of Mr. Lee's claim to the furniture and slaves, until all the other securities had failed, and he was about to execute the powers given him by the deed of trust of 1817.

The following facts were agreed by the counsel of the parties, namely: That R. B. Lee and wife were housekeepers and resided together in Fairfax county, in Virginia, on the 9th of January, 1809, and the said R. B. Lee then held the property mentioned in the deed of trust of that date, and that the property continued in their possession after, as before, the execution of that deed, and so continued until they removed to Washington city in 1814 or 1815, and brought the property with them. After which the household furniture was assessed to R. B. Lee; and four of the slaves were, for the first time, assessed to him in 1818. That prior to the 9th of January, 1809, R. B. Lee was seized in fee of five eighths of eight thousand acres of land in Spotsylvania county, in Virginia, which was conveyed by him and wife to Ludwell Lee in fee-simple. That the execution, due acknowledgment, and recording of the deeds and bills of sale exhibited with Mr. Lee's answer, are admitted; and also the execution and services of the notices referred to in Mr. E. J. Lee's answer. That the deed of trust of the 9th of January, 1809, was delivered to the trustees therein named; that they agreed to act, but never took possession of the property, or of any part of it.

The cause was set for hearing on the bill, answers, general replication, exhibits, and facts agreed, and was argued by Mr. R. S.

Coxe, for the plaintiffs, and Mr. Marbury, for the defendants.

CRANCH, Chief Judge, (THRUSTON, Circuit Judge, absent,) delivered the opinion of the court:

The principal question in the case is, whether the deed of the 9th of January, 1809, from R. B. Lee to E. J. Lee and others, in trust for the defendant, the wife of R. B. Lee, is valid against his subsequent creditors. The execution, due acknowledgment, and recording of that deed, as well as the deed of R. B. Lee and his wife to Ludwell Lee, of the 16th of July, 1809, and the trust-deed to Turner and others to secure Judge Washington, are admitted. The bill avers, that if the supposed deed of the 9th of January, 1809, was ever executed, it was a voluntary and fraudulent deed; and that the considerations expressed in the deed were false. To this allegation the defendant, Mrs. Lee, answers, in substance, that her agreement to relinquish her right of dower in five thousand acres in Spotsylvania county, and to mortgage other lands in Fairfax county, which were then held by trustees for her use, to secure a debt due by her husband, was the consideration of his agreement to convey to E. J. Lee and others, for her use, the property described in the deed of the 9th of January, 1809; and that in pursuance of that agreement the deeds were executed accordingly. This answer, being thus directly responsive to the allegations of the bill, is evidence of a sufficient valuable consideration to support the deed of trust of the 9th of January, 1809, under which Mrs. Lee claims. It was not a voluntary deed, and, therefore, it is immaterial whether Mr. R. B. Lee was, or was not, indebted at the time of executing it. The relinquishment of dower is as fair and meritorious a consideration as the payment of a sum of money. The payment of Judge Washington's claim did not impair the validity of the deed, but operated as a release only, of a certain portion of the slaves therein described.

The fact that the deed to Ludwell Lee, for the five thousand acres of Spotsylvania land, was not executed by Mrs. Lee and her husband until the 16th of July, 1809, although the recital in the deed of trust of the 9th of January, 1809, states it to have been then executed, does not make the deed void. The real consideration of a deed is always examinable; and the parties are not estopped to show what was the true consideration. The agreement to release the dower was a sufficient consideration to prevent the deed from being a voluntary conveyance; and the subsequent actual release of dower made it an adequate consideration. That agreement is proved by Mrs. Lee's answer, which is responsive to the allegation in the bill that the deed was without consideration. The recital is, or is not, an estoppel to the parties.

to deny that the deed to Ludwell Lee was executed on the 9th of January, 1809. If an estoppel, the recital must be taken to be true. If not an estoppel, the true consideration may be proved, namely, the agreement to release the dower; and that is proved by Mrs. Lee's answer. If it was not a voluntary conveyance, it can only be impeached on the ground of fraud; and if the consideration was adequate, there can be no pretence for a charge of fraud. Nor is there sufficient evidence to charge Mrs. Lee with any fraudulent concealment of her title; or collusion with her husband to deceive the plaintiffs before, or at the time, of their lending the money to Mr. Lee, or of their taking his deed of trust to Mr. Smith. Indeed, the bill does not charge it. It only avers that Mrs. Lee and Mr. E. J. Lee knew that the plaintiffs had lent the money to R. B. Lee, in full faith that he was the real and unqualified owner of the property; and knew that he executed the deed to secure the payment of the money, and never communicated to the plaintiffs the existence of the deed of the 9th of January, 1809. This charge relates to a time subsequent to the execution of the deed, when neither Mrs. Lee, nor Mr. E. J. Lee, was bound to communicate any such information to the plaintiffs. Nor can their silence, after the execution of the deed, justify a charge of fraud or collusion. The time when the money was advanced is that at which the notice is material. Lord Chancellor Thurlow in Beckett v. Cordley, 1 Brown, Ch. 358. But if the bill had charged them with a fraudulent collusion at the time of Mr. R. B. Lee's deed of trust to Mr. Smith, their answers expressly deny concealment of the claim and knowledge of Mr. R. B. Lee's deed to Mr. Smith, and of his intention to secure the plaintiffs by such a deed until long after it was executed.

It has been contended, that the continued possession of Mr. R. B. Lee after the execution of the deed of trust of the 9th of January, 1809, is evidence of fraud. But that possession was perfectly consistent with the use raised by the deed. As long as Mr. and Mrs. Lee continued to live together she could only enjoy the use of the furniture and slaves, jointly with him; and her possession would appear to be his possession. Her use of property, in that way, could not be evidence of fraud.

The deed was a contract made in Virginia, and was executed with all the formalities necessary to make it valid there. The title to the property was complete, and was valid between the parties wherever they might be. By removing to the District of Columbia, the title was not impaired. There is no ground for supposing it to be necessary that the deed should be acknowledged or recorded in this District. The power, reserved by Mr. Lee, to dispose of any part of the property with the consent of the trustees, and upon substituting an equivalent, it is said, is a badge of fraud. But it is only a general power of revocation which is a badge of fraud; whenever the consent of other independent persons is required, or an equivalent is to be substituted, there can be no objection to the power of revocation; it affords no evidence of fraud.

It is objected that if the recital is to be taken as true, and if the relinquishment of dower had been made before the execution of the deed of the 9th of January, 1809, the consideration was executed, and therefore was not sufficient to sustain the deed. But this objection, I apprehend, applies only to executory contracts, not to conveyances. An executed consideration may not be sufficient to sustain an executory contract, and yet a past or executed consideration may be a sufficient consideration for a grant; which is a contract executed in praesenti—not to be executed in futuro. If the objection is applicable to this deed, it is applicable to all our conveyances; for they also say "in consideration of" so much money, "at or before the sealing and delivery of these presents, in hand paid, the receipt whereof," the grantor "hereby acknowledges," &c. The money may have been paid a year before, or the consideration may be an old debt, and yet we have never heard an objection to such a consideration of a deed; and the deed under which the plaintiffs themselves claim, is given for a past or executed consideration, namely, the sum of $6,000 loaned on the day preceding the date of the deed, the receipt whereof the said R. B. Lee thereby acknowledged; and no other consideration is averred in the deed.

It is objected that the use which Mr. Lee made of the property, by disposing of some of the slaves, and mortgaging others, &c., without the consent of the trustees, or of Mrs. Lee, and without substituting an equivalent, was inconsistent with the nature of the deed, and therefore is evidence that the deed was fraudulent. But as between Mrs. Lee and him, or those claiming under him, (as the plaintiffs do), it is no mark of fraud. It is a matter entirely between her and him, or his assigns. If he has violated the rights of Mrs. Lee, and she chooses to acquiesce rather than quarrel with him, no third person has a right to interfere; the property was hers, and she had a right to do with it as she pleased; and, because she has submitted to some violation of her rights, it does not follow that she must relinquish what are left.

We are of opinion that the deed of trust of the 9th of January, 1809, to Mr. E. J. Lee, Mr. Maffit, and Mr. Colman, was a good and valid deed, made bona fide, and upon a valid and valuable consideration, and has not been impaired by any subsequent conduct or transactions of Mrs. Lee, or her trustees, and that the bill must be dismissed with costs. Bill dismissed.

[NOTE. On appeal to the supreme court this decree, dismissing the plaintiffs' bill was affirmed. The opinion of the court was delivered by Mr. Justice Catron, and, in effect, it was held that the deed of 1809, vesting the property in Mrs. Lee's trustees, was effectual, according to the Laws of Virginia, to protect the title thereto against the subsequent creditors or purchasers from her husband, R. B. Lee, and that their removal into the District of Columbia with the property conveyed by the trust deed did not effect or impair the validity of such deed of trust. Mr. Justice Baldwin dissenting. Bank of U. S. v. Lee, 13 Pet. (38 U. S.) 107.]